DANIEL G. BOGDEN
United States Attorney
Nevada State Bar No. 2137
MICHAEL A. HUMPHREYS
Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone (702) 388-6336
Facsimile (702) 388-6787
Michael.Humphreys@usdoj.gov
Counsel for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>$127,020.00 IN UNITED STATES CURRENCY,<br><br>    Defendant. | 3:12-CV- (          ) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through Daniel G. Bogden, United States Attorney for the District of Nevada, and Michael A. Humphreys, Assistant United States Attorney, in a civil cause for forfeiture, respectfully states as follows:

### SUBJECT MATTER JURISDICTION

1. This Court has jurisdiction under the provisions of 19 U.S.C. §§ 1603, 1608, and 1610; 18 U.S.C. § 983; 28 U.S.C. §§ 1345, 1355 and 1395; 21 U.S.C. § 881; and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp. Rule").

### *IN REM* JURISDICTION

2. This Court will have *In Rem* jurisdiction over the defendant-currency if this

Court signs an Order for Summons and Warrant of Arrest, *In Rem*, for the property and the Clerk of the Court issues a Summons and Warrant of Arrest *In Rem*, which will be executed upon the defendant-currency and returned to this Court.

## VENUE

3. This Court has venue over this matter pursuant to 28 U.S.C. §§ 1355 and 1395 because the above-named defendant-currency is now and, during the pendency of this action, will be in the jurisdiction of this Court and because the defendant-currency was found in this judicial district.

## PARTICULAR DESCRIPTION

4. The defendant-currency is more particularly described as $127,020.00 in United States currency. At the time of the seizure, the currency was comprised of the following breakdown of denominations:

```
5012  twenty-dollar bills
 172  fifty-dollar bills
 139  one-hundred dollar bills
 370  ten-dollar bills
 111  five-dollar bills
  25  one-dollar bills
```

## PLACE OF SEIZURE

5. The currency was in a backpack belonging to Robert Cappiello. Capiello was a passenger aboard Amtrak Train No. 5 which had originated in Chicago, Illinois, and was destined for Emeryville, California. The backpack was in Sleeper Room 10, Car No. 531. The train was on a scheduled stop in Reno, Nevada when the currency was discovered and seized by members of the Reno Police Department. Subsequently, the case was adopted by DEA on May 3, 2012.

## CUSTODY OF ASSET

6. The defendant-currency has remained in the care, custody and control of the United States Marshals Service within the jurisdiction of this Court.

2

## TIMELY FILING

7. The defendant-currency was subject to administrative summary forfeiture proceedings. However, on June 29, 2012, Robert Cappiello filed an administrative claim with the Drug Enforcement Administration for the seized currency.

## CUSTODY OF ASSET

8. The defendant-currency has remained in the care, custody and control of the United States Marshals Service within the jurisdiction of this Court.

## VALUE

9. The face value of the seized currency is $127,020.00.

## FACTS

10. At approximately 8:45 a.m., on April 30, 2012, Officers Andy Carter, Joe Lever and Steve Mayfield, of the Reno Nevada Police Department, were conducting a routine interdiction investigation of possible drug-related activities on-board Amtrak train No. 5. Train No. 5 routinely travels from Chicago, Illinois to Emeryville, California and has a scheduled stop in Reno, Nevada. Through their individual, and collective, training and experience, the officers know drug traffickers and couriers of drug-generated proceeds use that train to transport contraband-drugs and drug-derived currency between the Midwest and the West Coast.

11. During the course of that investigation, Detective Carter learned that passenger Robert Cappiello (Claimant herein) had purchased a one-way ticket, with cash, from Chicago to Emeryville on the same day of travel. Cappiello was assigned sleep room number 10 in Car No. 531. The circumstances of that ticket transaction fit the pattern of drug traffickers and couriers.

12. Detective Carter located Cappiello standing on the platform beside the train. Carter approached Cappiello, identified himself as a police officer, and asked Cappiello if he (Carter) could talk to him. Cappiello consented but appeared nervous from the

beginning of their discussion. Although Detective Carter identified himself as a law enforcement officer, he was dressed in plain clothes, did not display a weapon and conducted the entire discussion with Cappiello in a professional manner and a conversational tone.

13. When first questioned about whether he had a large sum of currency on his person or in his room, Cappiello paused for an extended period of time before responding that he had $45,000.00 in his room.

14. Detective Carter asked Cappiello to take him (Carter) to the room and show him the money. In silent compliance, Cappiello began walking toward the room, but after moving a few feet stopped in the middle of the platform, staring blankly for several minutes without responding to any of Detective Carter's questions.

15. Rather than relying on Cappiello's confusing and bizarre behavior as consent, Detective Carter requested that drug detection dog, 'Xero,' be dispatched to Cappiello's room to determine if there was evidence of contraband or drug-derived currency within the room. "Xero" was stationed outside the door sleep Room 10, Car No. 531 and reacted to the presence of a controlled substance in the room.

16. Detective Carter went to Cappiello's room to retrieve the items as a prelude to making an application for a search warrant to search the items. In the meantime, Officer Mayfield stayed with Cappiello and engaged him in conversation.

17. During the course of that conversation, Cappiello admitted that he had a lot of money in his room. He said that there was between $120,000.00 and $130,000.00. Cappiello also said that the money was not his but belonged to a 'friend of a friend' in New York. Cappiello also told Officer Mayfield that the money was intended to be used as payment for marijuana.

18. After making statements regarding the presence and purpose of the currency, Cappiello gave consent for the officers to search his backpack. The backpack was

4

searched and the officers found the defendant currency packaged in vacuum-sealed bags. They also found pay/owe sheets in the backpack with the names of various individuals with amounts and types of marijuana written alongside the names.

19. The currency was seized based on probable cause to believe that it was proceeds, derived from or used to facilitate a drug transaction or transactions.

### FIRST CAUSE OF ACTION

20. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 19 as though fully set forth herein.

21. The defendant-currency was furnished or was intended to be furnished in exchange for controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CAUSE OF ACTION

22. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 21 as though fully set forth herein.

23. The defendant-currency is proceeds traceable to exchanges of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

### THIRD CAUSE OF ACTION

24. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 23 as though fully set forth herein.

25. The defendant-currency was used or was intended to be used to facilitate violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**CONCLUSION**

26. Because of the foregoing, the defendant-currency is subject to seizure and should be forfeited to the United States of America, pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays as follows:

1. Due process issue to enforce the forfeiture of the defendant-currency;

2. Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

3. The defendant-currency be condemned and be forfeited to the United States; and

4. This Court enter other and further relief as it deems just and proper.

DATED this 26th day of September, 2012.

    Respectfully submitted,

    DANIEL G. BOGDEN
    United States Attorney

    /s/ Michael A. Humphreys
    MICHAEL A. HUMPHREYS
    Assistant United States Attorney

## VERIFICATION

I, Shane Murray, DEA AGENT, am a Special Agent with the Drug Enforcement Administration. I have read the contents of the foregoing complaint. And I verify and affirm, under penalty of perjury, that the foregoing is true and correct pursuant to 28 U.S.C. §1746(2).

Executed on this 25 th day of September, 2012.

*[signature]*

Special Agent
Drug Enforcement Administration

RA-12-0088